

**SO ORDERED.**

**SIGNED this 19 day of March, 2010.**

_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

---

DESIGNATED FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BARBARA JEAN VOLLEN, | ) | Case No. 09-12460 |
| | ) | **Chapter 13** |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OPINION

The chapter 13 Trustee objects to the confirmation of debtor Barbara Jean Vollen's chapter

13 plan. Specifically, the Trustee objects to the debtor's claimed marital adjustment deductions for

her non-filing spouse on Line 13 and Line 19 of Official Form 22C, the Chapter 13 Statement of

Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form

22C" or "B22C").[1] First, the trustee objects to Ms. Vollen's use of a marital adjustment deduction

---

[1] Ex. A.

-1-

Case 09-12460   Doc# 41   Filed 03/19/10   Page 1 of 24

on Line 13 of Form 22C. This deduction results in Ms. Vollen being a below-median income debtor and reduces her applicable commitment period ("ACP") to three (3) years. The trustee questions not only the substance of the deduction, but also challenges the debtor's right to assert a marital deduction on Line 13 as being inconsistent with the provisions of § 1325(b)(4). Second, the Trustee asserts that the substance of the marital adjustment deduction from Ms. Vollen's current monthly income ("CMI") on Line 19 of Form 22C does not comply with § 1325(b)(1)(B), resulting in an understatement of her disposable income.

After trial and review of the parties' memoranda of law,[2] the Court is ready to rule as follows.[3]

Facts

Debtor Barbara Jean Vollen filed this case on July 31, 2009. According to her schedules, she owns no real estate or vehicles and has no secured or priority debt.[4] Ms. Vollen proposes to pay her creditors $250 each month for 36 months, or $9,000.[5] Except for the Trustee's fees and her attorney fees, all of the plan payments will go toward her unsecured debt of approximately $33,000, all of which is credit card debt. Ms. Vollen works at an animal shelter and earns roughly $620 in gross income bi-weekly. Ms. Vollen claims to be a below-median income based on her Form 22C. The trustee challenges Ms. Vollen's $3,829.87 marital adjustment deductions on Form 22C, Lines

---

[2] The debtor appeared in person and by her attorney Don W. Riley. The chapter 13 trustee Laurie B. Williams appeared by her attorney Christopher T. Micale.

[3] Unless otherwise indicated, all statutory references are to Title 11, U.S.C. as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").

[4] Ms. Vollen "holds or controls" a 2004 Honda CRV owned by her husband. *See* Dkt. 1, Statement of Financial Affairs, Question 14.

[5] Dkt. 3.

13 and 19.[6] Her Line 13 deduction renders Ms. Vollen a below-median debtor for the purpose of

determining her ACP under § 1325(b)(4), reducing her ACP to three years. Her deduction from

current monthly income (CMI) on Line 19 reduces Ms. Vollen's projected disposable income to be

paid to unsecured creditors as required by § 1325(b)(1)(B) and (b)(2).

Ms. Vollen lives with her husband, Jeffrey Vollen. The Vollens' daughter is 18 and

attending college outside the home. She remains dependent on the family for support. The Vollens

live in a home that Mr. Vollen nominally owns. They acquired the home in 1997 and have lived

together since its acquisition. Ms. Vollen admitted that if she did not live in the home, she would

have to rent a place to live. The home is encumbered by two mortgage liens, one to Wells Fargo and

a second to Central Star Credit Union. Ms. Vollen did not sign either note and is, therefore, not

obligated to either lender. The first mortgage monthly payment is $837 (inclusive of taxes and

insurance) and the second mortgage monthly payment is $305.[7]

Mr. Vollen owns two vehicles, a 2004 Honda CRV and a 2001 Honda Civic. His daughter

drives one at school and he drives the other in his daily pursuits. No one presented any evidence

about how Ms. Vollen gets to work.

Mr. Vollen works in the aircraft industry. He makes considerably more money than Ms.

Vollen does and, were all of his income to be added to hers without any marital adjustment on Line

13, the couple's CMI would well exceed the median income for Kansas. The Vollens maintain

separate checking accounts. Mr. Vollen contributes some $500 a week to Ms. Vollen in order for

her to pay certain family expenses, including the first mortgage payment, utilities, groceries,

---

[6] *See* Dkt. 19; Ex. A.

[7] *See* Ex. 14.

clothing, home maintenance, car insurance, and gas for the vehicles. In addition to taxes and 401k contributions, Mr. Vollen's employer deducts from his income payments for the second mortgage, the two car loans, the signature loan, and his 401k loan.

Mr. Vollen has signed a series of notes with Central Star Credit Union. In addition to the note secured by the second mortgage (incurred for home improvements or repairs), Mr. Vollen signed a note secured by a 2004 Honda CRV, a note to purchase the 2001 Honda Civic and a fourth unsecured note referred to as a "signature loan," that appears to be unsecured. The purpose of the signature loan is not entirely clear but a portion of the loan proceeds were for car repairs and credit card debt.[8] Mr. Vollen testified that he borrowed money against the 2004 Honda to refinance credit card debt of his own. The monthly payment on the 2004 Honda note is $241. The monthly car payment on the 2001 Honda utilized by their daughter is $109. The monthly payment on the signature loan is $206.

The Vollens' consistent testimony is that Mr. Vollen owns the major assets that the family uses and pays the debts that those assets secure, either by paying those debts directly or providing funds to Ms. Vollen to pay them. Mr. Vollen solely contributes to funding their daughter's college education. In addition, Mr. Vollen has other debts of his own that include a debt to Dell Credit and a 401k loan.[9] Finally, Mr. Vollen pays withholding taxes and withholds additional money from his paycheck for his 401k contributions. Ms. Vollen has no separate retirement account.

Mr. Vollen spends a small amount each month for personal recreation. His recreational

_____

[8] *See* Ex. 10.

[9] Mr. Vollen testified that he took out a 401k loan in the amount of $5,000 to pay expenses for his daughter's senior year of high school, including graduation and prom. The 401k loan repayment is $107.50 a month. *See* Ex. 14.

activities include golf, fishing, attending concerts, and occasional travel out-of-state to visit family.[10]

Ms. Vollen claims the following amounts as marital adjustment deductions from the income that is attributed to her under § 101(10A). These figures were provided as an attachment to Form 22C.[11] At trial, Ms. Vollen offered an itemized list of payments, some of which differed from those listed in the B22C's detail sheet. Those amounts are set out below in brackets.

| | | |
|---|---|---|
| 401K Contributions | $ 333.10 | |
| 401K Loan Repayment | 33.35[12] | [$107.50] |
| Payroll Taxes | 1,265.42 | |
| Loan Repayments | 744.00 | [$511.00] |
| Recreation | 20.00 | |
| Daughter's College Expense | 266.00[13] | [$704.08] |
| Central Star CU – Vehicle Loan | 109.00 | |
| Husband's credit card payments | 262.00 | [$241.00] |
| Mortgage | 837.00 | |
| [Dell Financial Services] | | [$ 49.00] |
| | | |
| TOTAL | $3,829.87 | |

---

[10] Ex. 11.

[11] *See* Ex. A.

[12] According to the attachment to Form 22C, Mr. Vollen's 401k loan repayments were $33.35 per month. However, on debtor's itemization of the marital deductions, the 401k loan repayments were shown as $107.50. No explanation was given for this discrepancy and debtor's supporting documentation for the 401k loan repayments supports the $33.35 figure. *See* Ex. 4. The Court will apply this rate of repayment for the marital deduction.

[13] At trial, Mr. Vollen testified that their daughter's college expenses were much greater than the $266 claimed on the attachment to Form 22C. Ex. 14 shows these expenditures to be $704.08 a month. It is unclear how Mr. Vollen arrived at this number. The supporting detail for college expenses shows periodic deposits to the daughter's checking account. It does not reflect the amounts incurred for tuition and housing, but does show some amounts spent for food, books, and entertainment. Mr. Vollen indicated that his daughter had taken out student loans for tuition. While the Court suspects that housing costs and living expenses alone more closely approach the $704.08 monthly figure claimed, there is no support in the record for either this amount or the $266.

-5-

At trial, the Vollens expounded upon and clarified these deductions.[14]  The "Loan Repayments" of

$744 were originally for the Central Star Credit Union signature loan, 2004 Honda CRV loan, and

the second mortgage.  The loan repayments are now comprised of the signature loan and second

mortgage and total $511, rather than $744. The husband's credit card payments were rolled over into

a loan secured by the 2004 Honda and those payments are now $241, rather than $262.  The Central

Star vehicle loan is for the 2001 Honda loan.  Finally, debtor's summary of marital deductions, Ex.

14, included a monthly installment payment of $49 to Dell Financial Services for a loan obtained

by Mr. Vollen to purchase a home computer.  This item was not included in the marital deduction

detail attached to Form 22C.[15]

> Analysis

This case requires the Court to interpret and apply principally two subsections of § 1325 of

the Bankruptcy Code:  § 1352(b)(2) and § 1325(b)(4).  The debtor's marital adjustment deduction

on Line 13 of Form 22C is linked to § 1325(b)(4) for determining the applicable commitment period.

It is an issue of first impression for this Court.  The debtor's marital adjustment deduction on Line

19 of Form 22C is linked to § 1325(b)(2) for the calculation of debtor's disposable income and

compliance with the requirement in § 1325(b)(1)(B) that all of the debtor's projected disposable

income to be received in the applicable commitment period be paid to unsecured creditors.  The

Court has previously alluded to Line 19 in its 2007 decision, *In re Shahan*.[16]

**A.**     **Line 13 Marital Adjustment Deduction, Applicable Commitment Period and §**
        **1325(b)(4)**

---

[14]  *See* Ex. 14 (marital adjustment itemized deductions prepared by debtor).

[15]  *Cf.* Ex. A and Ex. 14.

[16]  367 B.R. 732 (Bankr. D. Kan. 2007).

-6-

The trustee relies on the comparative language of § 1325(b)(2) and § 1325(b)(4) to contend that a married debtor filing an individual case should not be permitted a marital adjustment deduction in determining the applicable commitment period under § 1325(b)(4). She argues that because § 1325(b)(4) refers to the combined current monthly income of the debtor and the debtor's spouse, no deduction should apply. Section 1325(b)(2) only considers the debtor's current monthly income in determining the amount of disposable income that the debtor must pay. While she questions whether the debtor may adjust her income for applicable commitment purposes, the trustee concedes that the substance of the marital adjustment deduction, or the types of expenses that may be deducted from CMI, can be determined in the same fashion under both § 1325(b)(2) and (b)(4).

Section 1325(b)(2)(b)(1)(B) requires that if a chapter 13 debtor's plan does not pay all of the unsecured creditors in full, the debtor must pay all of her projected disposable income received in the "applicable commitment period" for their benefit. Section 1325(b)(4) governs the length of the "applicable commitment period [ACP]." It provides, in pertinent part:

> For purposes of this subsection [§ 1325(b)], the "applicable commitment period" –
> (A) subject to subparagraph (B), shall be – (I) 3 years; or (ii) not less than 5 years,
> *if the current monthly income of the debtor and the debtor's spouse combined*, when
> multiplied by 12 is not less than – . . . (II) in the case of a debtor in a household of
> 2, 3, or 4 individuals, the highest median family income of the applicable State for
> a family of the same number . . .[17]

Thus, in general, if the debtor has below median income, the ACP is three years.[18] If the debtor has above median income, the ACP is five years.[19]

---

[17] Section 1325(b)(4)(A) [Emphasis added.]. Subparagraph (B) is not applicable in this case.

[18] Section 1325(b)(4)(A)(I).

[19] Section 1325(b)(4)(A)(ii).

-7-

On its face, § 1325(b)(4)(A)(ii) appears to require consideration of a married debtor's spouse's income to determine the applicable commitment period, regardless of whether the spouse is joining in the chapter 13 filing. The statute refers to the "current monthly income of the debtor [or "CMI"] and the debtor's spouse combined." But the presence of the phrase "current monthly income" is significant. CMI is specifically defined in § 101(10A) and is peppered throughout the Code.[20] Section 1325(b)(4)(A)(ii) cannot be interpreted without considering the Code's definition of CMI in the contemporaneously enacted § 101(10A). CMI is defined as the income the "debtor" receives (and in a joint case, the income the "debtor and the debtor's spouse" receive). A married debtor's non-filing spouse is not a debtor. Because only debtors or joint debtors have CMI, the Court concludes that non-debtor spouses do not have CMI.[21] They merely have "income."

One of the components of CMI is any amount paid by a non-debtor entity for the household expenses of the debtor or the debtor's dependents.[22] Thus, as a practical matter, any funding the non-debtor spouse provides the debtor for that purpose becomes part of the debtor's CMI. Therefore, if the ACP calculation requires that the non-debtor's notional CMI be "combined," those funds he contributes to the household would be counted twice, once in her CMI and again in his hypothetical CMI. Section 101(10A) makes clear that (i) both incomes of joint debtors are part of CMI; and (ii) that a non-debtor's contributions to debtor's household support must also be included as CMI. By omission, § 101(10A) excludes from CMI that part of the non-debtor spouse's income

---

[20] *See e.g.,* § 1325(b)(2) (disposable income); § 707(b)(2)(A)(I) (presumption of abuse); § 707(b)(2)(C) (required filing by debtor of a statement of current monthly income); § 1322(d) (chapter 13 plan contents).

[21] *In re Clemons,* 2009 WL 1733867 at *2 (Bankr. C.D. Ill. 2009).

[22] §101(10A)(B).

-8-

that is not contributed to the debtor's household support. This is the so-called "marital adjustment."

The Court concludes that the "CMI of the debtor and the debtor's spouse combined" language in § 1325(b)(4), when applied in the case of a married debtor with a non-filing spouse, must refer to the debtor's CMI which, by definition, contains not only what her income may be, but also the contributions the non-debtor spouse makes to the household. As the non-debtor spouse cannot, by definition, have CMI, this is the most natural reading of these two statutes.

Much has been written about how these statutes have been given effect by Official Form B22C.[23] The ACP is calculated on Part II of Form 22C, Lines 12-17. Line 12 is the combined monthly income of debtor and debtor's spouse and is carried over from Part I, Line 11 of Form 22C. Part I of Form 22C contains the calculation of CMI, but provides only two options for reporting of income.[24] If the debtor is married, both the debtor's and the debtor's spouse's income are combined to create the result on Line 11 that is carried into Line 12, whether or not the debtor's spouse is a non-filer. The instructions to Line 13 provide for a marital adjustment to the combined income of debtor and the debtor's non-filing (or separately filing) spouse. The manner in which Part I of Form 22C reports "CMI" for a married debtor includes the non-filing spouse's income, without regard to whether that income was contributed to household expenses. No adjustment has been made to the Line 11 number for those amounts of the non-filing spouse's income that are not devoted to

---

[23] *See generally*, Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 379.2, at ¶ 1, et seq., Sec. Rev. July 12, 2007, www.Ch13online.com (hereafter "Chapter13 Bankruptcy").

[24] If single, only the debtor's CMI is listed in Column A. If married, both the debtor's CMI in Column A and the spouse's "CMI" in Column B are provided, without regard to whether the spouse is filing. Even though a married debtor's spouse may not be filing, the spouse's notional CMI is calculated in Part I. As noted previously, a non-debtor spouse has no CMI by definition.

household expenses.

In order to capture only the contributions to household expenses by the non-filing spouse that count as part of the debtor's CMI and to prevent counting these contributions twice (once as the non-filing spouse's income that funds them and again as the debtor's income), the non-filing spouse's income that is not regularly contributed to household expenses should be backed out of the combined income number on Line 11 to calculate the applicable commitment period under § 1325(b)(4)(A). Note that Line 7 of Form 22C includes in CMI amounts paid by another person for the household expenses of the debtor or debtor's dependents, *except for amounts paid by the debtor's spouse.* If two spouses file jointly, these amounts are already included in each debtor's CMI. But if a married debtor files without her spouse, the Line 11 total should be adjusted for the non-filing spouse's income that is not regularly contributed for household expenses. Line 13 provides that opportunity. If the debtors are married and filing jointly, both debtors' CMI is represented on Line 11 and there is no "marital adjustment" to be made on Line 13 because each joint debtor's contributions to household expense is already captured in each debtor's income received from all sources.[25]

Because the applicable commitment period is directly connected to the *debtor's* projected disposable income to be paid under the plan under § 1325(b)(1)(B), the Court concludes that allowing a marital adjustment deduction on Line 13 is most consistent with the definition and calculation of disposable income in § 1325(b)(2). The Court therefore sides with the overwhelming majority of courts that allow a marital adjustment on Line 13 for the non-filing spouse's income

---

[25] *See* § 101(10A)(A).

under these circumstances.[26]    In its own way, the form follows the logic of § § 101(10A) and

1325(b)(4).  As Judges Lundin and Brown state in their treatise:

> The path of least resistance is to accept the marital adjustment if you are a married
> debtor not filing jointly and subtract at Line 13 all of the spouse's income included
> in Part I except for amounts paid on a regular basis for the household expenses of the
> debtor or the debtor's dependents.[27]

In general, it makes little sense to exclude that part of Jeffery Vollen's income that is not

regularly contributed to the household expenses of the debtor or debtor's dependents in the

calculation of Ms.  Vollen's disposable income while including it in the ACP calculation to extend

Barbara Vollen's plan for two additional years.  That part of Jeffrey's income that is not contributed

to household expense would not figure in the disposable income calculation, nor would it be

contributed to free up debtor's income to make the plan payment over the extended period.  In that

regard, Judge Karlin's reasoning in *In re Dugan* is both compelling and correct:

> The Court can think of no reason why Congress would require the Court to treat a
> married debtor, who elects not to file jointly with his spouse, as if the case was filed
> jointly solely for the purpose of calculating the applicable commitment period, but
> provide different treatment [of a married debtor filing individually] for all other
> aspects of the means test.  There is no readily apparent basis for requiring a debtor
> to account for all of his [non-filing] spouse's income when determining whether a
> Chapter 13 case must run for 36 or 60 months, but then allowing at least a portion
> of the spouse's income to be totally disregarded when deciding all other issues, such
> as what the debtor's projected disposable income will be . . .

---

[26]  *Clemons*, 2009 WL 1733867 at *2 (citing six bankruptcy cases adopting the view that
a marital adjustment is allowed: *In re Stansell,* 395 B.R. 457 (Bankr. D. Idaho 2008); *In re
Borders,* 2008 WL 1925190 (Bankr. S.D. Ala. 2008); *In re Dugan,* 2008 WL 3558217 (Bankr.
D. Kan. 2008); *In re Grubbs,* 2007 WL 4418146 (Bankr. E.D. Va. 2007); *In re Hall,* 2007 WL
445517 (Bankr. C.D. Ill. 2007); *In re Quarterman,* 342 B.R. 647 (Bankr. M.D.Fla. 2006)  and
one case disallowing the marital adjustment on Line 13: *In re Ariyaserbsiri,* 2008 WL 5191200
(Bankr. E.D. Tex. 2008)).

[27]  *See* Chapter 13 Bankruptcy, *supra* at § 379.2,  ¶ 11.

Instead, the Court finds the more reasonable interpretation of § 1325(b)(4) is that Congress inadvertently failed to include the qualifier that the spouse's current monthly income must only be "combined" with the filing debtor in a joint case by putting those words in parenthesis . . . as it did in the definition of current monthly income.[28]

As do many other courts, this Court concludes that Barbara Vollen is entitled to a marital adjustment on Line 13 for the income that Jeffrey Vollen does not regularly contribute to her or their daughter's household expenses. Accordingly, the Trustee's legal objection to the debtor's marital adjustment deduction on Line 13 is OVERRULED. The Court addresses the substance of the adjustments below.

**B.** *In re Shahan,* **Line 19 Marital Adjustment Deduction and Net Disposable Income, § 101(10A) and § 1325(b)(2)(A)(I)**

To confirm the plan over the trustee's objection, § 1325(b)(1)(B) requires the debtor to show that all of her disposable income to be received in the applicable commitment period will be paid to unsecured creditors. For below median income debtors, disposable income is defined in § 1325(b)(2) as:

> *current monthly income received by the debtor* . . . less amounts reasonably necessary to be expended – (A)(I) for the maintenance or support of the debtor or a dependent of the debtor . . .[29]

As noted above, § 101(10A) defines CMI in a single debtor case as the average monthly income received by the debtor from any source for six months before the petition date. It includes "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses

---

[28] 2008 WL 3558217 at *3 (Bankr. D. Kan. 2008).

[29] For above-median income debtors, the "amounts reasonably necessary to be expended" in calculating disposable income are determined by the standard deductions under § 707(b)(2). *See* § 1325(b)(3).

-12-

of the debtor or the debtor's dependents . . ."[30]   Thus, what a non-filing spouse regularly pays for

household expenses of the debtor or debtor's dependents is included in the debtor's CMI.  What the

non-debtor spouse does not pay toward household expenses of the debtor or debtor's dependents is

"deducted" from the debtor's CMI as a marital adjustment on Line 19 of Form 22C.

 This Court has previously considered the impact on CMI of non-debtor spouses making

mortgage payments in *In re Shahan.*[31]   In *Shahan*, an above-median income debtor sought to deduct

the secured debt payments his non-filing spouse made on a vehicle and a home (in which debtor

lived) from disposable income on Line 47 of Form 22C.  The Court disallowed the Line 47 secured

debt payment deductions because the non-debtor spouse was solely liable for the secured debt

payments, but not the debtor.  Section 1325(b)(3) provides that an above-median debtor's disposable

income is measured using the means testing calculus set out in § 707(b)(2)(A)(ii)(I).   That

subsection only allows a deduction for the "*debtor's* applicable monthly expense amounts...for the

debtor...and the spouse of the debtor *in a joint case* . . . ."  The Court concluded that the non-debtor

spouse's payments could not be deducted as payments of the debtor because it was not a joint case

and the debtor did not make the payments.  Instead, the Court concluded that payments made by a

non-filing spouse on assets solely owned by the non-filing spouse could not be amounts paid on a

regular basis for household expenses under § 101(10A) and therefore could not be included in CMI.

Because they could be deducted from CMI, the Line 47 deduction was improper.  As the Court

suggested in *Shahan*, while the payments were inappropriate Line 47 deductions, they could be

deducted from the non-filing spouse's income on Line 19:

---

[30]  Section 101(10A)(B).

[31]  367 B.R. 732 (Bankr. D. Kan. 2007).

> To reach another conclusion would dictate that a spouse who does not file with her husband is actually worse off than a spouse who does. Under the Trustee's theory, Debra would be required to contribute less of her income had she filed a joint case with Robert, even though she appears to have no need for bankruptcy relief and Robert is solely liable on the debts listed in this case. If the aim of BAPCPA was to reduce bankruptcy filings, this can hardly be what the Congress had in mind.[32]

*Shahan* also addressed dependent expenses and recreation expenses of the non-filing spouse and concluded that these expenses could also be deducted on Line 19 as a marital adjustment.[33]

Because *Shahan* involved an above-median income debtor the Court was required to address the § 707(b)(2) deductions as taken on part IV of Form 22C (where Line 47 is located) for determining disposable income in accordance with § 1325(b)(3). In the present case, Ms. Vollen is a below-median income debtor to whom the § 707(b)(2) standardized deductions are not available. Part IV, Line 47 does not come into play.[34] But the Line 19 marital adjustment, found in Part III of the form, is available to above-and below-median debtors.[35] The facts of *Shahan* are different from this case in two key ways. First, the non-filing spouse in *Shahan* had acquired the home and

---

[32] *Id.* at 738.

[33] These expenses could not, however, be deducted as "other necessary expenses" on Line 59 of Form 22C, as contemplated by § 707(b)(2)(A)(ii)(I). 367 B.R. at 739-40.

[34] While the calculation of the "amounts reasonably necessary to be expended" for the maintenance or support of the debtor or debtor's dependent in determining the disposable income of an above-median income debtor are determined by the means test standardized deductions in § 707(b)(2) [*See* § 1325(b)(3)], the same calculation for a below-median income debtor is determined by Schedule J expenses [*See* § 1325(b)(2)]. *See In re Lanning*, 545 F.3d 1269, 1275 (10th Cir. 2008), *cert. granted Hamilton v. Lanning*, 130 S. Ct. 487 (Nov. 2, 2009); *In re Kibbe,* 361 B.R. 302, 306 n.3 (1st Cir. BAP 2007); *In re Daniel*, 359 B.R. 320 (Bankr. D. Kan. 2006).

[35] *See In re Charles,* 375 B.R. 338, 342 (Bankr. E.D. Tex. 2007) (Noting that the contribution of a non-filing spouse is clearly defined by BAPCPA in § 101(10A) and limits the extent to which a court may consider income of non-filing spouse in determining projected disposable income; this limit applies regardless of whether debtor is an above-median or below-median income debtor.).

-14-

vehicle prior to her marriage to the debtor and brought these assets to the marriage as her separate property. Here, Mr. Vollen acquired the marital home and the vehicles while married to Ms. Vollen but titled the property solely in his name. In both instances, the home and vehicle were not property of the bankruptcy estate. Second, the dependent expenses in *Shahan* were the non-filing spouse's support of a daughter from a previous marriage and the daughter was not a dependent of the debtor. The daughter in *Shahan* was not counted in the household size for purposes of Form 22C. Here, the Vollens acknowledge that their daughter is dependent upon both of them and she is included in the household size (3) on Form 22C.

The key inquiry for determining the propriety of a marital adjustment on Line 19 is the extent to which a non-filing spouse's income is not regularly contributed or dedicated to the household expenses.[36] The statutory predicate for this marital adjustment is found in the definition of CMI, which includes "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents"[37] If the non-filing spouse's income is not regularly contributed for household expenses, it should not be included in calculating a debtor's disposable income and should be "deducted" from CMI as a marital adjustment. Therefore, the Court applies this analysis to the various items claimed as Line 19 marital adjustments by Ms. Vollen.

### 1. Mortgage Payments on Home Solely Owned by Non-filing Spouse

The debtor argues that, like the debtor in *Shahan,* she has no legal interest in the residential real estate and should therefore be allowed to deduct from CMI the amounts Mr. Vollen pays on the

---

[36] 367 B.R. at 736-37.

[37] § 101(10A)(B).

two liens ($837 and $305) that encumber it.[38]  The Trustee objects to the adjustment and asks the Court to revisit its prior conclusions in *Shahan*.

As noted above, the debtor in *Shahan* did not own the real property.  His non-debtor wife owned the property prior to their marriage and was solely obligated on the mortgages that encumbered it.  Under Kansas law, property owned by a person prior to his or her marriage remains such person's sole and separate property, notwithstanding the marriage.[39]  A married person's separate property is not liable for the spouse's debts.[40]  A married person's separate property becomes marital property upon the commencement of an action for divorce.[41]  Common ownership in the marital property vests in each spouse at the moment a divorce action is commenced and the marital property is thereafter subject to division between the spouses in accord with KAN. STAT. ANN. § 60-1610(b)(1) (2008 Supp.).[42]

Thus, in *Shahan* the house acquired and owned by the non-filing spouse prior to her marriage

---

[38]  At least one case cited by the debtor (Dkt. 36) actually supports the trustee's position on the marital adjustment for the non-filing spouse's mortgage payments.  *See e.g., In re Baldino,* 369 B.R. 858 (Bankr. M.D. Pa. 2007) (mortgage payment on house owned by non-filing spouse contributed to household expenses and was therefore included in debtor's income under § 101(10A)).

[39]  KAN. STAT. ANN. § 23-201(a) (2007).

[40]  *Id.*

[41]  KAN. STAT. ANN. § 23-201(b) (2007).

[42]  *See Cady v. Cady,* 224 Kan. 339, 344, 581 P.2d 358 (1978).  However, in making a division of the property, the domestic court shall consider "the property owned by the parties," "the time, source and manner of acquisition of property," and "such other factors as the court considers necessary to make a just and reasonable division of property."  KAN. STAT. ANN. § 60-1610(b)(1) (2008 Supp.). *See also, In re Marriage of Hair,* 40 Kan. App. 2d 475, 193 P.3d 504 (2008) (District court did not abuse its discretion in awarding accounts to husband that were traceable to inheritance received by the husband).

-16-

to the debtor, was the non-filing spouse's separate property. The debtor had no interest in the separate property absent a divorce petition.[43] If the house payments on this separate property were included as part of the filing spouse's CMI in the bankruptcy, as "amount[s] paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents" and in the calculation of disposable income under § 1325(b)(2),[44] the separate property would effectively be subjected to the filing spouse's debts. In the Court's view, a marital adjustment for payments on separate property is appropriate under these very narrow factual circumstances. This case is different.

While it is clear that Mr. Vollen is the only person obligated on the debts secured by the mortgages on the home, the record is conflicting whether Mr. Vollen is the sole owner of the real property. The home was originally deeded to Mr. and Mrs. Vollen as joint tenants. Their original warranty deed was executed by the grantors on August 12, 1997 and recorded on August 18, 1997 at Film 1715, Page 0776. Several months after that deed was recorded, the Vollens "RE-filed to correct Buyer name" a "correction deed" that struck Mrs. Vollen's name as a grantee and struck the survivorship language in the granting clause. The grantors did not re-execute the "correction deed" which appears to the Court to be a copy of the first deed because it contains the same date of execution and acknowledgment. It also contains the original warranty deed recording information and was "re-recorded" on February 2, 1998 at Film 1755, Page 2147. But for the effect of a curative statute, the "correction deed" would be defective because, apart from the lack of present execution

---

[43] *See In re Oetinger*, 49 B.R. 41, 43 (Bankr. D. Kan. 1985).

[44] Section 101(10A)(B).

of the correction deed,[45] the grantors no longer had any interest in the property to convey solely to Mr. Vollen.[46]

Kansas law provides that defective instruments may be cured by the passage of time and given effect. KAN. STAT. ANN. § 58-2237 (2005) provides:

> When any instrument of writing shall have been on record in the office of the office of the register of deeds in the proper county for the period of ten (10) years, and there is a defect in such instrument because . . . of any defect in the execution, acknowledgment, recording or certificate of recording the same, such instrument shall, from and after the expiration of ten (10) years from the filing thereof for record, be valid as though such instrument had, in the first instance, been in all respects duly executed, acknowledged, and certified . . ., after the expiration of ten (10) years from the filing of the same for record, impart to subsequent purchasers, encumbrancers and all other persons whomsoever, notice of such instrument of writing so far as and to the same extent that the same may then be recorded, copied or noted in such books of record, notwithstanding such defect.

Here, the "corrected deed" was recorded on February 2, 1998. The ten year period passed in February 2008 and the corrected deed became valid and effective from and after that date. The effective date of the corrected deed precedes the date of the bankruptcy filing. Accordingly, the Court concludes that on the date of the petition, Mr. Vollen was the sole owner of the home.[47] If this Court applies the *Shahan* rule to this case, what Mr. Vollen pays on this real estate would be

---

[45] *See* KAN. STAT. ANN. §§ 58-2203, 58-2209, 58-2211 (2005).

[46] *See Kirkpatrick v. Ault,* 177 Kan. 552, 557, 280 P.2d 637 (1955) (Court held that correction deed was ineffective and judgment creditor's lien attached to husband's interest in the real property.)

[47] Mrs. Vollen testified that she believed she was on the deed to the home, until the corrected deed was shown to her to refresh her recollection. *See* Ex. E. She was initially unhappy about having her name removed from the deed but reconciled herself to that when a lender representative explained to her that the loan was based only on Mr. Vollen's credit. The lender would not discuss the loan with her because she was not on the note and when the lender realized she was on the deed, caused the deed to be corrected to remove Mrs. Vollen's name from the warranty deed.

-18-

deductible on Line 19 as amounts not contributed to household expense.

Since *Shahan*, a few courts have held to the contrary. Most recently, in *In re Trimarchi*, the court expressly disallowed a marital adjustment deduction of mortgage payments on Line 19 "because the mortgage is an expense that is paid on a regular basis for the household expenses of the Debtor and her son, as well as the non-debtor spouse."[48] In *Trimarchi*, the court stated that allowing the marital deduction of this expense simply because the debtor is not liable on the underlying obligation "ignores the reality that the debtor benefits from the payment of the mortgage expense."[49] The *Trimarchi* court discounted this Court's previously expressed view that attributing the non-debtor spouse's income expended in payment of those debts to CMI would place the spouse in worse financial condition than if he had actually sought bankruptcy relief. Instead, that court considered that the plain language of Form 22C required the inclusion of the non-debtor payments in CMI. In so holding, the *Trimarchi* court denied the Line 19 deduction, but allowed the debtor the standard housing deduction on Line 25B even though she incurred no actual housing expense. *Trimarchi* is the factual mirror opposite of *Shahan*.

As this Court noted in *Shahan*, it is difficult to square allowing the marital deduction of payments made on the family home as something other than regular household expenses. The Court reached the conclusion it did in *Shahan* because of the non-debtor's exclusive legal ownership of the real estate acquired prior to the marriage. Here, the Vollens acquired an initial interest in the real estate during their marriage and it is their family home. The Court continues to believe that its allowance of a marital adjustment on Line 19 of Form 22C was proper in *Shahan* on its facts. At

---

[48]  421 B.R. 914, 920 (Bankr. N.D. Ill. 2010).

[49]  *Id.* at 922.

the same time, the Court believes the factual distinction between *Shahan* and the case at bar warrants a different result here, where the property was acquired (and even owned briefly by the debtor) during the marital relationship for the purpose of housing Ms. Vollen and the couple's dependent daughter. In these circumstances, the Court concludes that debtor is not entitled to a marital adjustment for the mortgage payments made by the non-filing spouse on the marital home because such mortgage payments are for the household expenses of the debtor and the debtor's dependent daughter and are therefore to be counted as part of Ms. Vollen's CMI under § 101(10A), not deducted on Line 19. Accordingly, the marital adjustment for the mortgage payments is disallowed.

### 2. College Expenses and Car Payment for Dependent Daughter

With respect to the college expenses ($266-$744) and car payments on the 2001 Honda ($109) that Mr. Vollen pays for the Vollens' daughter, the daughter is a dependent of the debtor and is included in the debtor's household on Form 22C. The daughter drives the 2001 Honda while at college. A dependent's college expense, even when incurred by a person of majority, is a household expense. A dependent is one who is sustained by another or relies on another for support. The Vollens' daughter clearly falls into that category and the family's expenses incurred subsidizing her higher education and providing her with a means of transportation while she is a dependent amount to support. Therefore, the Court concludes that the funds Mr. Vollen expends for their daughter's college expenses and the 2001 Honda payment are household expenses of the dependent daughter that may not be deducted as a marital adjustment on Line 19.[50]

---

[50] Although this conclusion differs from the result reached in *Shahan* with respect to support payments and college expenses paid to an adult daughter by the non-filing spouse, the difference is explained by the fact that the daughter in *Shahan* was not a dependent of the debtor and was not included in debtor's household size on Form 22C. *See* 367 B.R. at 740.

### 3. Loan Repayments on Non-Filing Spouse's Signature Loan and 2004 Honda CRV Loan

The Court next considers payments on the other loans for which only Mr. Vollen is liable. Mr. Vollen refinanced his credit card debt by borrowing against the family's 2004 Honda CRV, resulting in a monthly payment obligation of $241. The Court has carefully reviewed the various charges on the credit card statements and concludes that nearly all of these expenses were incurred for food, apparel, and other personal incidental expenses. These are typical household expenses. Mr. Vollen testified that he eats out frequently, both for lunch during the work day and in the evening when the family is pressed for time. This is no different than Mr. Vollen packing a lunch or cooking dinner at home, only more costly. Either would generate household expense. Similarly, credit card charges for clothing for his daughter are part of household expense. Therefore, repayment of the 2004 Honda CRV loan amounts to repayment of household expenses incurred on credit and may not be deducted from CMI on Line 19. Mr. Vollen's signature loan appears to have been taken out for car repairs and an additional refinancing of credit card debt. The Court similarly concludes that the signature loan repayment ($206) is an amount regularly contributed to household expenses and may not be claimed as a marital adjustment on Line 19.

### 4. Non-Filing Spouse's Paycheck Withholdings and Deductions

Mr. Vollen's tax withholdings ($1,265.42) do not enter the household income stream and should therefore be deducted from CMI as a marital adjustment. Because they are withheld by the taxing authorities, they are not regularly devoted to household expense.[51] For similar reasons, Mr. Vollen's 401k contributions ($333.10), as well as his 401k loan repayments ($33.35), deducted from

---

[51] *See Shahan, supra* at 737.

his paycheck are appropriate marital adjustments from CMI. None of these dollars enters the household income stream. In addition, by contributing to his 401k plan and repaying money he has "borrowed" from that account, Mr. Vollen adds to an account that is, as a matter of Kansas law, solely his property. The Court recognizes that Ms. Vollen may be a beneficiary of this account at some future point, but, as of the petition date, these funds are Mr. Vollen's separate property. No "marital estate" arises in Kansas until a dissolution of marriage petition is filed by a spouse.[52] These paycheck amounts may be deducted as marital adjustments on Line 19.

### 5. Non-Filing Spouse's Recreation Expenses

Consistent with *Shahan,* the Court concludes that Mr. Vollen's personal recreation expenses ($20) are not payments contributed to household expenses.[53] He effectively is spending his income on his own expenses. This amount may be deducted on Line 19 as a marital adjustment.

### 6. Non-Filing Spouse's Payments to Dell Computer

At trial, debtor sought to add to the marital adjustment the monthly $49 payment made by Mr. Vollen for a computer he purchased on credit. The record is largely silent on the purpose and usage of the computer other than that Mr. Vollen purchased a "home computer" from Dell. On this limited record, the Court concludes that the home computer is a household expense and therefore, the Dell computer payment may not be deducted as a marital adjustment on Line 19.

### C. Conclusion

Based upon the foregoing analysis, the Court concludes that the following amounts paid by Mr. Vollen, as the non-filing spouse, are regularly contributed to the household expenses of debtor

---

[52] *See* KAN. STAT. ANN. § 23-201.

[53] 367 B.R. at 740.

and the Vollens' dependent daughter and may not be properly deducted as marital adjustments on either Lines 13 or 19 of Form 22C: first and second mortgage payments on the home owned by Mr. Vollen ($837 + $305 = $1,142); payments made for the Vollens' daughter's college expenses ($266 or $704.80); payments on the 2001 Honda note ($109); payments on the 2004 Honda note ($241); and payments on the signature loan ($206). Marital adjustment deductions are appropriate for the following entries: Mr. Vollen's recreation expense ($20); Mr. Vollen's payroll taxes ($1,265.42); Mr. Vollen's 401k contributions ($333.10); and Mr. Vollen's 401k loan repayments ($33.35). Ms. Vollen may therefore deduct the sum of $1,651.87 as a marital adjustment on Lines 13 and 19 of Form 22C.

According to the Court's calculations, the forgoing results in the debtor's annualized CMI being $64,490.52, which exceeds the then-applicable median income of $63,245.[54] This has the effect of extending the debtor's ACP to five years under § 1325(b)(4) and rendering the debtor "above-median" for disposable income purposes under § 1325(b)(3). This in turn implicates the calculation of deductions from the debtor's income provided for in § 1325(b)(3) and § 707(b)(2) on Part IV of Form 22C. Because the present form does not contain that information, and because the debtor's plan proposes an ACP that is too short, her plan cannot be confirmed. While the Court has OVERRULED the Trustee's legal objection to debtor's Line 13 marital adjustment for the purpose of determining the ACP, the Court SUSTAINS the Trustee's objection to debtor's proposed ACP as being shorter than the appropriate marital adjustment warrants. In addition, the Court SUSTAINS the Trustee's disposable income objection relative to the amount of the Line 19 marital adjustment.

---

[54] $7,026.08 (Line 11 income) - $1,651.87 (Line 13 and Line 19 marital adjustment) = $5,374.21 CMI, or $64,490.52 annualized CMI.

-23-

The debtor is granted 21 days from the entry of this order to (1) amend her Form 22C and her plan in accordance with this Opinion, or (2) convert this case to Chapter 7.

# # #